## No. 11,241.

### SUCCESSION OF MYRA CLARK GAINES.

The power of courts to order the remission of funds belonging to a foreign suc-
cession to the representatives of the succession authorized to receive them,
by the courts of the domicil of the deceased, we consider undoubted. Its ex-
ercise is necessarily a matter of discretion, depending on the circumstances of
each case, and is a consequence of that comity which prevails between nations
in amity with each other.

The interests of commerce and civilization require that this comity should be
carried into effect by our tribunals.

It is done in England and in other States of the Union, in analagous and similar
cases; and whenever the rights of our citizens are not affected by the act to be
done, it is the duty of this court to act on a principle which is impressed on us
equally by an enlightened policy and a certainty that it will tend to the great
purposes of justice.

The court having recognized the validity of the judgment probating the will of
Myra Clark Gaines, pronounced in New York, in which was the domicil of the
testator;

The legatees and creditors being before the court and applying to be paid here;

The assets of the succession are ordered to be distributed here, and legacies,
creditors and all charges are ordered paid from the funds on hand.

The case is remanded for the disposition of the property, and for the passing
upon questions at issue in accordance with views expressed.

APPEAL from the Civil District Court, Parish of Orleans.
King, J.

Thomas J. Semmes and Rouse & Grant Attorneys for the Heirs,
Appellees:

1. The transfer of assets to New York is a matter of judicial discretion. 95 N. Y.
R. 59; 13 La. 298; 6 An. 151.

2. All administrations of successions in Louisiana are principal, not ancillary, so
far as distribution of assets is concerned. C. C. 1220; 15 An. 405.

3. The registry of a foreign will does not entitle the foreign executor to exercise
authority in this State. Succession of Butler, 30 An. 890.

4. The heirs are entitled to be put in possession here. C. C. 1671; 34 An. 26; 36
An. 48.

R. De Gray and Brown & Choate Attorneys for Legatees, Appel-
lants:

1. Personal property has no situs but that of the owner; and its transmission by
contract, inheritance or will is controlled by the law of the domicil of the
owner. Succession of Packwood, 9 R. 443; Succession of McCandless, 3 An. 581;
Peale vs. White, 7 An. 449; Atkinson vs. Rogers, 14 An. 633; Perin vs. McMicken,
15 An. 155; Thomas vs. Morrisat, 76 Ga. 384; 2 Kent's Com. 429; 4 Kent's Com. 513;
Wilkin vs. Ellett, 9 Wall. 740. There is nothing in the statutes of Louisiana to

the contrary. Article 491, C. C., has no reference to the disposition of personal property situated in Louisiana and owned by parties domiciled in other States or foreign countries. Perin vs. McMicken, 15 An., p. 155; Succession of McCandless, 3 An. 581; Succession of Franklin, 7 An. 395.

2. The proceedings of the probate of a will in any State is a judicial proceeding under Article IV, Sec. 1, of the Constitution of the United States, and when duly authenticated under act of Congress of the 26th May, 1790—now Sec. 905, U. S. Rev. Stat.—is entitled to full faith and credit in every other State to which it may be brought. Succession of Thomas E. Bowles, 3 Rob. 34; Johnson vs. Runnels, 6 Mart., N. S., p. 622; Balfour vs. Chew, 5 Mart., N. S., p. 519; Bright vs. Whit 8 Missouri, 426; Robertson vs. Barton, 6 Monroe's Ky. Reports; Haile vs. Hill, 13 Missouri, 618; Thomas vs. Morrisat, 76 Ga. 384; Dalrymple vs. Gamble, 68 Md. 523; Green vs. Sarmiento, 3 Wash. C. C. 21; and is to have the same force and effect in the State to which it may be brought, even though such judgment could not be there rendered, as it has in the State whence it is taken. Hampton vs. McConnell, 3 Wheaton, 234; Renaud vs. Abbott, 116 U. S. 277; Carpenter vs. Strange, 141 U. S. 87; and the refusal to give said judicial proceedings such precise force and effect is a denial of a right secured under the Constitution and laws of the United States. Christmas vs. Russell, 5 Wall. 290; Green vs. Van-Buskirk, 5 Wall. 307, and 7 Wall. 139; Insurance Co. vs. Harris, 97 U. S. 331, 336; Crescent City Co. vs. Butchers' Union, 120 U. S. 141, 146, 147; Carpenter vs. Strange, 141 U. S. 87; Huntington vs. Attrill, 146 U. S. 657.

3. Any statute or law or decision denying this effect is unconstitutional and void. Christmas vs. Russell, 5 Wall. 290.

4. And when a will has been duly proved before a competent judge of the place where it was received, the order of execution in Louisiana should be granted without any other form. Civil Code, Art. 1639; Succession of Bowles, 3 Rob. 34.

5. The succession at the place of domicil of the deceased is the home or primary succession, and that at the place where property may be situated outside of the State of the home or primary succession is the ancillary succession. Story's Conflict of Laws, Sec. 513; Stevens vs. Gaylord, 11 Mass. 262, 263; Succession of Milton Taylor, 28 An. 367, 372; Borer vs. Chapman, 119 U. S. 599.

6. And it makes no difference which succession was opened first. Stevens vs. Gaylord, 11 Mass. 262, 263.

7. After the payment of creditors, costs and charges at the place of the ancillary succession, the residuum of the estate should be sent to the place of the primary or home succession for the payment of costs and charges there incurred, debts there due, and for distribution of the balance in accordance with the directions of the will, or according to law. Story's Conflict of Laws, Sec. 513; Gravelon vs. Richards, 13 La. 298, 299; Mourain vs. Poydras, 6 An. 152; Wilkins vs. Ellett, 9 Wall. 741; Freeman on Judgments, Sec. 605a.

---

*Farrar, Jonas & Kruttschnitt* Attorneys for New York Administrator, asking judgment transferring residuum of assets to Probate Court, Kings county, New York, Appellant:

1. After a Louisiana court has administered upon the estate of a non-resident dying in Louisiana, after it has satisfied the claims of home creditors, the whole estate will be transmitted to the home administrator for distribution at the domicil of the deceased and under the order of the courts located there. Mourain vs. Poydras, 6 An. 152; Succession of, Milton Taylor, 25 An. 446; 28 An 367.

2. The action of the heirs for the residuum of a succession, after it has been administered upon and all debts and charges paid, is not an immovable under Art. 471, C. C.
3. That the succession itself is not an immovable unless composed of immovables.
4. That the action brought by the administrator of a foreign State for a residuum, is not an immovable.

*Thos. J. Semmes* and *Rouse & Grant* Attorneys for Heirs on Application for Rehearing cite: 95 N. Y., p. 55; Harvey vs. Richards, 1 Mason, p. 414; 18 How. 100.

*R. DeGray* and *Brown & Choate* Attorneys for Legatees:

1. When all parties in interest are before the court and admit the validity of the legacies, there is no longer any reason for their transmission; there is every reason for their payment where the fund is and when parties in interest are willing to receive the same, and no creditor or other person is to be injured thereby.

The opinion of the court was delivered by

WATKINS, J.   The object of this suit is the recovery, by the New York administrator of the *primary* succession of the deceased in that State, of the *residuum* of assets of the *ancillary* succession in the State of Louisiana, from the administrator appointed under the laws thereof; and for their removal to the probate court of Kings county, New York, for the purposes of administration and distribution under and in pursuance of the laws of that State, and of the provisions of the will of the deceased therein admitted to probate.

The demand of the New York administrator, as well as that of certain legatees under the probated will, is resisted mainly on two grounds, viz.:

1. That the allowance of such an application is within the discretion of the courts of this State, and this is not a proper case for its exercise.

2. That our Civil Code requires a complete administration, within this State, of the successions of non-residents, and that the courts of this State should deal with them as if they were domestic estates.

The facts necessary to be stated as pertinent to the issues involved, and in order to a clear understanding of same, are as follows, viz.:

On the 5th of January, 1885, Mrs. Gaines made her will in the city of New Orleans, and died in this city on the ninth of that month; though she was at that time a citizen and resident of the State of New York, and temporarily absent therefrom.

Soon afterward the persons named in said will as joint testamentary executors thereof presented same to the Civil District Court for the parish of Orleans (in Louisiana) for probate, but its probate was refused on the ground that it was informal and not entitled to probate under the laws of Louisiana, though reserving proponents' right to present said will in Washington, D. C., the supposed residence of the deceased at the time of her demise.

On appeal to this court of another branch of the case, the judgment of the lower court was affirmed (38 An. 123), the proponents of this particular will having acquiesced in the judgment rendered in the court below.

There subsequently arose a controversy in the courts of this State in 1889 between one of the Christmas grandchildren and one of the Whitney grandchildren, over the administration of the Louisiana succession of deceased, and it was decided in favor of the latter, who was duly qualified (42 An. 699)—the sole asset thereof being a judgment against the city of New Orleans for the sum of $923,788.

Contemporaneously with these proceedings in Louisiana, others were inaugurated in the Surrogate's Court of Kings county, New York, for the purpose of obtaining therein the probate of the aforesaid will of Mrs. Gaines, and which resulted in a judgment of the latter court, on the 24th of June, 1891, probating it; and thereunder William B. Davenport, of New York, was appointed temporary administrator of decedent's estate in pursuance of the laws of that State.

Subsequently the administrator of the Louisiana succession of deceased filed an account, wherein are exhibited sundry large amounts as having been paid and disbursed, and certain others as of doubtful validity, the payment whereof ought to be refused, showing a large cash surplus to his credit unexpended.

The recognized legal heirs of the deceased appeared therein and preferred claim to this surplus, and their demands are resisted by five different alleged legatees of the deceased under the will that was probated by the New York court—the aggregate of whose claims are about $55,000—and also by the New York administrator.

These various parties appeared, by way of oppositions to the account, and the demands of the heirs to be placed in possession, and substantially claimed " that the balance of the funds or assets here remaining, after the payment of all debts here proved, should be paid over to said Davenport, temporary administrator, for distribution by the surrogate's court aforesaid," coupling with their demand the prayer that, in the alternative said relief should be refused, the court should order the Louisiana administrator to pay same out of the funds in his hands.

The special averments of Davenport's opposition are to the effect that there are large legacies that were created by said will, and debts due, and others contested, which must necessarily be adjusted, paid or rejected by the New York administrator, after same have been passed upon by said probate court, and for that purpose he prayed " that the said residue of the estate here remaining, after the payment of all the debts here established, be paid over to him for administration in Kings county, New York."

Its further averment is that, under the laws of New York, he, as temporary administrator, has all the powers of an administrator with a will annexed, or dative testamentary executor under the law of Louisiana, and that there are large legacies created by said will, and debts due by persons domiciled in the State of New York; and, also, amounts claimed to be due to persons there domiciled, which claims and debts must necessarily be adjusted and paid, or rejected by the administrator under the will of the deceased, in said county of Kings, in the State of New York.

Its further averment is that large amounts are also due for attorney's fees, costs and disbursements in the matter of the probate of said will, and in the matter of the defeat of another so-called will, commonly known as the Evans will; and that all of said claims should be passed upon by the said court of probates of the domicil of said deceased.

It is further alleged therein, that the administration of the deceased's estate in Louisiana has been purely auxiliary, and for the purpose of paying debts due creditors of the deceased residing in this State, or those who had obtained judgments in the courts sitting in Louisiana.

After these recitals, comes the opponents' prayer for the surrender and delivery to him of the surplus of funds remaining in the admin-

istrator's hands, after all demands against the Louisiana estate have been paid and fully satisfied.

The foregoing summary of established facts, and the truth of opponents' averments of fact, are conceded, leaving for discussion and decision only the two questions of law heretofore propounded.

On the trial all of said oppositions were dismissed, and the administrator's demand was rejected; the judgment reserving the rights of the legatees to make claim for their legacies from the Louisiana administrator, or heirs, in case the court should order the registry and execution of the decedent's will.

In a different proceeding in the same succession in Louisiana, reported in 45 An. 1237, the lower court rejected and disallowed the will which had been probated in New York, and from that judgment an appeal was prosecuted to this court, and same has this day been decided, and the judgment appealed from reversed.

In so deciding, the purport of our opinion is, that the probate of said will in New York is recognized " to the extent necessary to make it the basis of claims predicated upon it as such"—the will of deceased.

It is further to the effect that the administrator of the estate of Mrs. Gaines in Louisiana is *ancillary*, merely, and that the administration thereof in Kings county, New York, is the *primary* administration of her estate; same having been inaugurated at the place of the decedent's domicil, and predicated upon her will. It further held that these recognized and established facts must be given effect in the courts of Louisiana, as established facts.

It necessarily follows from that judgment, that the opponents can not make claim for their legacies, either from the Louisiana administrator or heirs, inasmuch as the will of deceased has not been ordered to be registered and executed here. And, just here, it must be observed and borne in mind, that this controversy contemplates no further act of administration in Louisiana, but on the contrary, it proceeds upon the opposite hypothesis that the ancillary succession here has been closed, and terminated by the payment of *all* the claims proved, or provable here, only contemplating the removal of the residue of assets afterward.

Hence, the question arises whether opponents have made out, under the law, a proper case for a transfer of the *residuum* of the ancillary succession in Louisiana to the Probate Court in Kings

county, New York, for administration there, according to law and the provisions of the will.

This question arose and was decided in the case of Gravillon vs. Richards, Executor, 13 La. 293, in which Judge Eustis, as the organ of the court, expressed the following opinion:

" The power of courts to order the remission of the funds belonging to a foreign succession, to the representatives of the succession authorized to receive them by the courts of the domicil of the deceased, we consider undoubted. Its exercise is necessarily a matter of discretion, depending on the circumstances of each case, and is a consequence of that comity which prevails between nations in amity with each other. The interests of commerce and civilization require that this comity should be carried into effect by our tribunals. It is done in England and in other States of the Union, in analogous and similar cases; and whenever the rights of our citizens are not affected by the act to be done, we shall feel ourselves bound to act on a principle which is impressed upon us equally by an enlightened policy, and a certainty that it will tend to the great purposes of justice.      *      *      *

" We therefore determine as the interests of no one will be injured thereby, that the Court of Probates ought to have placed the funds of the estate at the disposal of the syndics and curator of the vacant estate, for the purpose of their being transmitted to the place of domicil of the deceased for distribution."

The same principle was recognized and reannounced in Mourain vs. Poydras, 6 An. 151, and again in Succession of Taylor, 28 An. 367 —and we are aware of no decision of this court to the contrary.

The cases cited by counsel for the Louisiana administrator and heirs—Heirs of Henderson vs. Rost, 15 An. 465, and Succession of Butler, 30 An. 890, are dissimilar to this case, in that the demands of foreign administrators were rejected, on the ground that they exhibited no legal title to interfere with existing administrations under the local law, before same had been concluded by the payment of debts and charges against the ancillary successions.

Nor are the provisions of Art. 1220 of the Civil Code opposed to the principle we have quoted from the cases cited—the evident intention of that article being to require the administration of the successions of persons domiciled out of the State, only to the extent of paying debts by them. The legislative act of 1842 simply requires a

foreign executor to furnish bond and security before he can undertake the administration of an estate in Louisiana.

On this question the New York jurisprudence conforms to our own. See Despard vs. Churchill, 53 N. Y. 192, and Parsons vs. Lyman, 20 N. Y. 103.

The Supreme Court has likewise held in Wilkins vs. Elliott, Administrator, 9 Wall., 740.

In the brief of opponent's counsel the following pertinent questions are propounded, viz.:

"If the power of the foreign executor to receive the assets belonging to an estate, and which are beyond the territory of the State in which he is appointed, is denied, and he has no right to ask the administrator of the ancillary estate to turn the *residuum* over to him, how, we ask, is the *residuum* ever to get to the parent or primary administration for distribution? If the foreign executor must apply and qualify here, and become an officer of this court, how is he to get the fund in this court, to the court under which the parent succession is being administered? Must he, as an officer of this court, settle with himself as an officer of the other court? And if yes, does he then do anything more than he is asking to have done now, to-wit: to have an officer of this court turn over the remaining *residuum* to the officer of that other court? If his right to receive is only (in a case like the present, where under the law of New York he is vested with title) coextensive with the territorial limits of the State of his appointment, how is he, when made an officer of this court, with a grant of power which can only be—on the same theory, coextensive with the limits of this State—to get the personal property here beyond the limits of this State?

"If such was the law, the personal property here could never be gotten beyond the limits of the State where the same may be found, to pay the debts and legacies that might be due at the testator's domicil."

In our opinion these questions find a correct answer and solution in the decisions above quoted; and, on the authority of the sound principles of jurisprudence therein formulated, we hold that the New York administrator is legally and rightfully entitled to have the *residuum* of the assets of the succession of the deceased remaining in the hands of the Louisiana administrator after all debts and charges therein have been fully paid and discharged, removed into

Surrogate's Court of Kings county, State of New York, there to be administered and distributed according to law, and in conformity to the will of the deceased.

We further hold and decide that the oppositions were incorrectly overruled and dismissed, and that same should be reinstated and sustained to the extent of authorizing the transfer of the *residuum* of assets to the surrogate's court in Kings county, New York—the rights of the opposing legatees to there assert their claims being fully reserved.

We further hold and decide that the demand of the legal heirs to be put into possession of said *residuum* of assets as an inheritance was improperly sustained and must be rejected and disallowed.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed in the following particulars, viz.:

*First*—By rejecting and disallowing the demands of the legal heirs of Mrs. Gaines to be placed in possession of the *residuum* of the assets of her ancillary successor after debts and charges have been paid.

*Second*—So as to reinstate the oppositions of the legatees and of the New York administrator; and to recognize and specially reserve the rights of said legatees to present their demands in the New York court conformably to law, and to have same therein judicially determined contradictorily with said New York administrator.

*Third*—So as to sustain the demands of the opponents, requiring the *residuum* of assets in the hands of the administrator of the ancillary succession in Louisiana to be transferred to the Surrogate's Court of Kings county, State of New York.

And it is further ordered and decreed that the demands of the legal heirs to be placed in possession of the *residuum* of the succession be rejected and disallowed; that the rights of the opposing legatees be reserved to present and have their claims determined in the New York court without prejudice; and that the administrator of the ancillary succession in Louisiana be ordered and required to transmit, in proper form of law, to the Surrogate's Court, Kings county, New York, the *residuum* of assets remaining in his hands after all debts and charges against said ancillary succession have been paid and discharged.

It is further and finally ordered and decreed that in the foregoing particulars the account of the administrator be amended, and in all other respects approved; and that as amended the judgment appealed

from be affirmed, costs of oppositions and appeal to be taxed against administrator and appellees.

Mr. Justice Parlange takes no part.

### ON THE MATTER OF REHEARING.

BREAUX, J. The appellees applied for a rehearing and for a modification of the decree, so as to allow payment here to the legatees under the will.

In their application the legatees represent that all the legatees are before the court.

They allege that the records do not disclose that Mrs. Gaines was indebted in New York and that there is no legal necessity to send the legatees to that city to get their money.

That no creditor from New York has asked a transfer of the funds to that State, and that the transfer of the funds is a matter of discretion, depending upon the circumstances of each case.

This court having decreed that the domicil of Mrs. Gaines was in New York, attention is directed to the fact that though the decedent was domiciled in New York and the administration was auxiliary only in this State, the legatees, distributees and creditors may recover amounts due them out of the assets here.

In support of the application the following cases are cited: *In re* Hughes, 95 New York, p. 55; Harvey vs. Richards, 1 Mason, 381.

Speaking for the court Judge Story, regarding the *lex rei sitæ* in the last case, says:

" Why should not legatees and distributees be entitled to recover out of the assets here as well as creditors? It is true that legatees claim by the bounty of the testator, but it is a legal right as fixed and vested as the right of a creditor. And as to distributees the case is still stronger, for that rests not on the bounty of the intestate, but on the law of the land, which at the same time enables the creditor to receive his debt out of the assets and the next of kin to claim the residue."

Upon the authority of the decision from which we have just quoted appellees principally relied in their application for a rehearing.

The appellants also filed a brief on the application for a rehearing, from which we quote:

" The validity of the will of Mrs. Gaines being fully established, first by the decision of the Surrogate's Court of Kings county, New

York, declaring it to be the last will of the testatrix and a valid will of real and personal estate; second, by the recognition thereof as such last will by decree of this court, in No. 11,193, and third, by the admission of all parties in interest, now before the court, in their application for the modification of the decree herein, the titles of the legatees to the respective amounts therein named is beyond dispute, for they are settled by both the judgment of the court and the admission of all parties in interest.

" This being the case, it can make no difference where the legacies provided for in the will are paid, whether in the home or the ancillary succession."

The court ordered that the parties in interest be heard regarding the modification of our decree, so as to avoid as much as possible the incurring of further costs and expenses at the home succession, where there are no assets.

At this hearing all the parties in interest were present and consented to a modification of our former decree, in order that the respective claims represented be paid here, except the counsel for the administrator of the home succession in New York, who, though not a party to the agreement, interposed no special objection, but asked, if modification of the decree as applied for be granted, that the rights of his client, the temporary administrator, and of all creditors who might recover through his administration of the home succession in New York, be reserved; that the validity of these claims and charges may be established before the court contradictorily with the other parties in interest in the settlement in so far as relates to the succession funds here.

Under the circumstances payment can be ordered by the court of all funds in this State.

A final settlement may be made of the succession so far as relates to these funds.

The consent of the legatees and of the creditors of the succession support the application to pay the funds on hand to the legatees, distributees and creditors.

It would serve no useful purpose to compel the interested parties and all claimants to abandon their pleas here in a court of competent jurisdiction to renew them in another tribunal.

The funds being within the court's jurisdiction may be paid here,

and included in the settlement of the ancillary succession in this State.

The question of the judicial agency through which the settlement shall now be made arises.

Shall the present administrator continue in the discharge of his trust, or shall an executor qualify under the will? It devolves upon us to determine.

The last will and testament of Myra Clark Gaines appoints two executors.

One of the two survives and is a resident of the city of New Orleans.

This will has been probated and recognition has been given by this court to the authority of a judgment pronounced in a sister State probating the will and ordering the execution of its terms. The judgment having been rendered by the court having jurisdiction of the domicil of the testatrix, a validity now exists not previously recognized.

It follows that the payments should be made by the executor named by the testatrix and that these funds should be under his administration.

The present administrator will have to account to the executor appointed under the will.

It was stated in argument for a rehearing that certain payments had been made by the administrator here in certain legacies, and it was said on behalf of the appellants that these payments should be ignored, and that the assets should be accounted for by the administrator to the executor without reference to these payments.

That issue not being before the court it is not decided, but left to be first passed upon by the court of the first instance.

All rights are reserved to the administrator, contradictorily with the executor who may be appointed, to prove the legality and correctness of these payments on legacies and advances to the heirs, if any have been made.

It is therefore ordered, adjudged and decreed that this case be remanded to the court a qua to be proceeded with in accordance with law and the views herein expressed.

That the legacies, debts and charges be paid here and complete settlement made with legatees, distributees and creditors to the extent of the funds on hand; that a final accounting be given and final

account filed by the executor of his administration of these funds and of the ancillary succession in this State.

After all legal claims and charges on the part of legatees, distributees and creditors shall have been paid and all entitled to any part of these funds settled with, if there be a *residuum* as per final account of the executor, that the *residuum* be transferred to the legal representative of the estate authorized to receive it in the Surrogate's Court of Kings county, New York.

That upon proper application an executor be appointed to execute the will of Myra Clark Gaines, of January 5, 1885, probated in the Surrogate's Court of Kings county, New York, on 24th June, 1891; that he execute the will after having qualified, and that he account as herein ordered.

That the administrator of the succession in this State shall account to the executor thus appointed for all amounts received by him and for all disbursements, and render full account of his gestion.

That all questions of the validity and the effect of payments made by the administrator are left to be, in the first instance, passed upon by the court of original jurisdiction, with all needful rights to protect their respective interests reserved.

That all the rights of the temporary administrator, appointed by the Surrogate's Court of Kings county, New York, be reserved in order that he may recover all amounts due him and that all creditors with valid claims be paid in the rank due and to the extent the funds will pay them; this includes all valid claims and charges, whether presented through the temporary administrator or independently of his trust, all to be proved up and recovered contradictorily with all parties in interest.

Our former decree is set aside in so far as it may be necessary to make it conform to our decree at this time. That portion which reads: "First, by rejecting and disallowing the demands of the legal heirs of Mrs. Gaines to be placed in possession of the *residuum* of the assets of her ancillary succession after debts and charges have been paid. Second, so as to reinstate the opposition of the legatees and of the New York administrator, and to recognize and specially reserve the rights of said legatees to present their demands in the New York court, conformably to the law, and to have the same judicially determined contradictorily with said New York administrator."

That this copied portion and all of the original decree is only

changed, amended and annulled to the extent and in those respects necessary to make it conform with the decree now rendered.

This amending and annulling as made has become necessary in order to carry out the agreement of the interested parties.

In all other respects than that before provided our original decision remains.

The case having been argued and the agreement made by counsel. considered, our decree is changed as above without further hearing. Without the necessity of a rehearing the modification is made and rehearing, is therefore, refused.